## Dobbins Estate

Before Klein, Bolger, Hunter and Boland, JJ.

110

112

*Adams, Childs, McKaig & Lukens, Murdock K. Goodwin* and *Mark E. Lefever*, for exceptants.

*Townsend, Elliott & Munson*, contra.

HUNTER, J., January 4, 1951.—Mary A. Dobbins died January 27, 1929, and by the twenty-fourth paragraph of her will, in the exercise of a power conferred by the will of her brother, Edward T. Dobbins, she appointed legacies aggregating $2,020,000 to the Pennsylvania Company, etc., in perpetual trust for 27 charitable and religious institutions. One of these trusts (subparagraph XXIII) was of $100,000 "to pay the net income to the Kensington Hospital for Women, to be used for free beds in said Hospital and to be known as the 'Edward T. Dobbins Fund' ". The several legacies suffered an abatement to 93 percent because of insufficient assets, and the Kensington Hospital fund is now valued at $70,000.

The question raised by these exceptions is the application cy pres of the income of the Kensington Hospital fund upon the dissolution of that corporation. The hospital was founded for the general purpose of

providing maternity service for women and treating women's diseases generally described as gynecological, and it continued during the years 1905 to 1945 to provide substantially that type of service. It did not in practice become a general hospital, although its charter was so amended in 1922. It was located in the Kensington district of Philadelphia, which district has about 213,000 inhabitants. Its general service was to the women of that community.

In 1941 it got into financial difficulties, which resulted in an operating agreement with the Episcopal Hospital, eight city blocks distant, and in numerous ways administration of the two hospitals was integrated. In 1945 Kensington Hospital closed its doors. Many of its patients, particularly maternity patients, were transferred to Episcopal. All of its staff except one were appointed to Episcopal, and its medical records transferred.

In 1947 Court of Common Pleas No. 3 of Philadelphia County in cy pres proceedings awarded Kensington's assets of $78,000 to Episcopal, which award was confirmed by the Supreme Court in Kensington Hospital for Women case, 358 Pa. 458. The decision was that the court below had not abused its discretion in awarding the assets of a defunct nonsectarian institution to an institution which was sectarian under its charter but which in practice did not discriminate in any way as regards race, color or creed. Mr. Justice Allen M. Stearne dissented, on the ground that there were other nonsectarian hospitals in reasonable proximity who were qualified to receive the fund.

We are informed that Episcopal's charter has since been amended to delete all references which may constitute it a sectarian organization.

The common pleas decree disposing of the absolute assets of the Kensington Hospital is not binding as to

a trust fund within the jurisdiction of the orphans' court, but it is helpful and persuasive.

By decree of this court, Samuel R. Rosenbaum, Esq., was appointed amicus curiae, with the power of a master, to report his findings and recommendations as to the distribution of the fund. Appearances in behalf of 38 claimants were entered before the master, who after extensive hearings reported in favor of an award of the income of the fund to the Episcopal Hospital. Judge Klein, the auditing judge, approved the report and adopted the findings and conclusions of the master. The purpose of this opinion is to discuss only questions which have been raised by exceptions and arguments before the court in banc.

### Exceptions of Pennsylvania Company, Trustee

The Pennsylvania Company for Banking and Trusts, trustee for the other charities named in the will, takes the position that since no trust received 100 percent of its legacy by reason of abatement of assets, the will requires proration of the fund among the other legatees, and if resort be had to cy pres, the same result is reached.

Exceptant refers to paragraph 24, subpar. XXVIII, where testatrix provides that any "undevised" portion of her brother's estate not "disposed of" by her, shall be prorated among the 27 charities. Also to paragraph 25 wherein testatrix expressed her desire "beyond all possibility of doubt" to exercise the power, and directed that in case any or all of the provisions of paragraph 24 "shall fail", then the portion of the estate over which she shall not have exercised her power shall pass to the 27 charities "absolutely" in the respective amounts of their legacies.

These provisions, in our opinion, refer to possible defects in her exercise of the power, and to contin-

gencies which might occur before the vesting of the legacies. She anticipated the decision in Dobbins' Estate, 13 D. & C. 331, wherein Judge Stearne (now Justice Stearne) held that testatrix's power of appointment did not extend to the erection of trusts for the benefit of the named charities. Under this decision Wills Eye Hospital (paragraph 24, subpar. XXVI and paragraph 25, subpar. XXVI) demanded and was paid the principal of its legacy. Kensington Hospital for Women did not take advantage of the decision, but with all other legatees agreed that their legacies be paid to the trustee under the trusts as set forth in paragraph 24 of the will.

Therefore, under any construction of the will, these legacies vested in the charities at the date of testatrix's death. Upon the dissolution of a charity, its property does not revert to the donor or his heirs, but is to be applied cy pres to uses which approximate those for which it was created: Appeal of Humane Fire Co., 88 Pa. 389; McCully's Estate, 269 Pa. 122; Wilkey's Est., 337 Pa. 129.

In the application of the cy pres doctrine the court is not required to divide the fund among the other charities named by a testator, nor to make selection of one of them; see Wanamaker Estate, 364 Pa. 248; Dreer's Estate, 13 D. & C. 257; Pentz's Estate, 42 D. & C. 296. Also Ironmongers' Co. v. Attorney-General, 8 Eng. Rep. 983 (1844); Mayor of Lyons v. Advocate-General, 1 App. Cas. 91 (1876); First Wisconsin Trust Co. v. Racine College et al., 225 Wis. 34 (1937); Attorney General v. Briggs et al., 164 Mass. 561 (1895). It is a satisfaction to know, however, that the master has recognized Episcopal Hospital, one of testatrix's charities named in paragraph 24 of the will, and found it best fitted to carry out her intent with respect to the Kensington Hospital fund.

*Exceptions of Women's Homeopathic Hospital*

Women's Homeopathic Hospital of Philadelphia has filed exceptions which relate principally to the conclusion of the master, approved by the auditing judge, that the donor's intent was to benefit the people of Kensington and the hospitals there were in a preferred position. Exceptant contends that it should not be disregarded because it is located outside of the Kensington district.

Women's Homeopathic is located at Twentieth Street and Susquehanna Avenue, Philadelphia. Like Episcopal, it is not devoted exclusively to women. It treats men also, in a proportion of 48 percent. It was well regarded by testatrix because it also was made beneficiary of the income of $100,000 by paragraph 24, subpar. III of the will.

We agree with the master that the intent of testatrix in selecting a local hospital in the Kensington district was to benefit the people of the designated area. As was said by the master, it is the court's "duty to preserve the benefit for such people, if that can be done, rather than to strain for reasons to take it elsewhere". See Williams Estate, 353 Pa. 638; In re Trexler Orphans' Home, 19 D. & C. 231; White's Estate, 20 D. & C. 585. There are five hospitals in the Kensington district, and as the master has demonstrated that there is a suitable institution in the area which will serve the purpose of testatrix, there is no necessity to look elsewhere. There are cases of charitable institutions where geographical location is of secondary importance, but as pointed out in the Trexler Home case, supra, by Judge Reno they are where the location fixed by testator is impossible, impractical or perhaps undesirable.

Perhaps the master should not have considered hearsay evidence of the interest of testatrix in the women of Kensington. There is, however, other convincing and

substantial support for his conclusions, and the rejection of such evidence would not affect the result.

### Exceptions of Kensington Hospital

A new Kensington Hospital corporation was formed shortly after the closing of the old Kensington Hospital for Women. It contends that it is for all practical purposes the successor of the old hospital, occupying the same buildings, and rendering the same service in the community.

It was formed by a group of physicians and a business man. The organizers paid $45,000 for the buildings and facilities of the old hospital, which sum went with the general cy pres award of the Court of Common Pleas No. 3 to the Episcopal Hospital. Financial difficulties were encountered, and there were disagreements among the group, and as a consequence a new group, with only a slight change in personnel, agreed to finance the institution.

The master has decided that claimant is not as well fitted as Episcopal Hospital to carry out the intent of testatrix, because its future is uncertain, it is one of the smallest of the five hospitals in the Kensington district, and probably the one most modestly equipped.

We join with the master in commending the efforts of the organizers of the new hospital, but feel as he does that Episcopal is better fitted to carry out the purpose of testatrix.

### Award to Episcopal Hospital

We approve the selection by the master of Episcopal Hospital as the institution which would most closely carry out testatrix's charitable purpose.

Stated briefly, the findings of the master are that it is the largest general hospital in the Kensington district, with 550 beds capacity, four wards for the care of women, 180 beds for women's diseases and 65 beds

for the care of maternity patients. It is physically equipped and staffed to handle efficiently the whole case-load of the former Kensington Hospital for Women and to apply to it the modern apparatus of a large general hospital, which the last named never possessed.

His award has precedent in the decree of Court of Common Pleas No. 3 disposing of the assets of the defunct corporation, affirmed by the Supreme Court.

The doubt raised by the financial problems of Episcopal Hospital and its operating agreement with the University of Pennsylvania is removed by the conditional decree entered by the auditing judge, which provides for a review of the award, which is of income only, should there be a material change in the conditions presently existing.

All exceptions are dismissed and the adjudication is confirmed absolutely.