## Darlington's Estate.

*Wills—Legacies—Gift of bonds—Description.*

1. A gift of "two 5% long term bonds of $1,000 each" is not void for want of specific designation, where among many bonds owned by testatrix one bond of the amount of $2,000 and percentage named may be selected.

*Wills — Legacies — Name of legatees —Mistake in name—Boy scouts.*

2. A gift to the "Pittsburgh and Allegheny County Council Boy Scouts of America," will not be defeated where it appears that the

real name of the association is "Allegheny County Council Boy Scouts of America," and there is no evidence of the existence of two organizations of the character named, having similar titles.

3. If there is a doubt on the subject, parol evidence is admissible to show for which council the legacy was intended.

*Wills—Devise—Interest in land—Charitable use—Perpetuities —Acts of April 26, 1855, P. L. 328, and May 23, 1895, P. L. 114.*

4. The fact that testatrix owned only an undivided interest in land devised to a charitable organization, does not affect the validity of the gift.

5. That differences may possibly arise in the future in the use of the property by the charity in attempting to carry out the wishes of testatrix, is a matter in which the orphans' court is not concerned in distribution.

6. A stipulation in such devise that the gift should not be liable for debts of the charitable organization, is a valid restriction; neither is such a devise void as violating the rule against perpetuities, inasmuch as it is protected by the Act of April 26, 1855, P. L. 328, and its various amendments, including the Act of May 23, 1895, P. L. 114.

7. Even if such devise for any reason be held defective, all interests of the residuary legatees or heirs-at-law are eliminated under the Act of 1895, and they are without standing to question the decree of the court.

*Wills—Name of legatee—Change of corporate name.*

8. A gift to the "University of Pittsburgh" will not be invalidated, because, in changing the name of the "Western University of Pennsylvania" to the name of "University of Pittsburgh," the proceedings were irregular.

*Wills—Charitable use—Corporation—Limit of amount of property to be held—Sale within five years—Act of June 8, 1891, P. L. 211.*

9. The court will not declare void a gift to a charitable corporation, because it would result in making the amount of the property owned by the corporation in excess of what it was allowed by its charter; nor will the court inquire into the effect of the Act of June 8, 1891, P. L. 211, requiring real estate devised for charitable purposes to be sold within five years from the time the right of possession shall accrue to such corporation.

*Wills—Probate—Subscribing witnesses—Disinterested witnesses —Gift to charity—Act of June 7, 1917, P. L. 403.*

10. Where the alleged disqualifications of a witness under the Act of June 7, 1917, P. L. 403, arises from an interest in a charity,

the interest which will affect his capacity must be in the nature of a direct property right in the testamentary fund, or such immediate, certain, close and intimate connection with the legatee as leads to the inevitable conclusion that the witness will pecuniarily profit by the legacy.

11. Where a witness is the ruling elder of a church to which a legacy is given, he will not be considered interested within the meaning of the act, where it appears that his duties in connection with the church were limited to matters of doctrine and discipline, and he had no voice in the management of the church property.

*Wills—Gift to charity—Death within thirty days of making will —Codicil.*

12. Where the rule is that a codicil operates as a republication of the will as of the date of the codicil, such republication does not operate to avoid gifts to charity contained in the will, unless the language used clearly shows such intention.

*Wills—Retention of funds to pay taxes until real estate is sold —Devise.*

13. The orphans' court commits no error in permitting a specified sum of money to remain in the hands of the executor for the purposes of paying taxes and other charges on property belonging to the estate, where testatrix provided that no final distribution of the residuary estate should be made until unimproved land was sold, and directed that the executor should have at least five years to dispose of such land.

Argued March 16, 1927. Before Moschzisker, C. J., Frazer, Walling, Kephart and Sadler, JJ.

Appeal, No. 54, March T., 1927, by Evans R. Darlington, collateral heir, from decree of distribution of O. C. Allegheny Co., June T., 1926, No. 140, in estate of Mary O'Hara Darlington, deceased. Affirmed.

Exceptions to adjudication. Before Trimble and Mitchell, JJ.

The opinion of the Supreme Court states the facts.

Exceptions, by collateral heir, dismissed in opinion by Trimble, J. Evans R. Darlington, collateral heir, appealed.

*Error assigned* inter alia, was, decree, quoting record.

*F. A. Ammon,* for appellant, Evans R. Darlington.—
The legacy to Mary E. Murray is void for want of a specific designation as to the identity of the bonds: Cumming's Est., 12 Pa. C. C. 45.

This authority also rules the trust fund left to Pittsburgh and Allegheny County Council Boy Scouts of America, per item 18th of the will, total $63,240 is void for want of specific designation.

The proceedings to change the name of Western University are unlawful as the petition does not contain the seal of the corporation and is signed by S. B. Linhart, secretary, and omits any executive officer of meeting duly had to assent to the change, and the whole proceeding is therefore void.

Frank C. Osborn, a witness to the original will, is a ruling elder in the First Presbyterian Church. A ruling elder has not only charge of the spiritual, but also directs the mundane affairs of the church, congregation and its properties; and, doubtless, has at least some voice in the disposition and application of these various funds.

Velma M. Mackey, a witness to the codicil, is a legatee under the original will and therefore is an interested witness, which would bar the religious and charitable legatees: Kelly's Est., 236 Pa. 54; Fetterhoff's Est., 228 Pa. 535; Stinson's Est., 232 Pa. 218; Pepper's Est., 148 Pa. 5.

A republication of the will and codicil operates as from the date of republication set forth in codicil: Cole v. Smith, 4 Pa. 376; Lee's Est., 16 Pa. Superior Ct. 627; Pepper's Est., 148 Pa. 5; Lightner's App., 57 Pa. Superior Ct. 469.

A codicil serves as a republication as of the date of codicil: Billing's Est., 268 Pa. 67; Reisher's Est., 261 Pa. 223.

An heir at law can be disinherited only by express devise or necessary implication, and in the construction of a will of doubtful meaning every fair intendment is

to be made in his favor. The title of the heir, being founded on the laws of descent, which are certain, is not defeated by an uncertain devise: Bender v. Dietrick, 7 W. & S. 284; Cowles v. Cowles, 53 Pa. 175; Rupp v. Ebberly, 79 Pa. 141; Raudenbach's App., 87 Pa. 51.

One claiming as devisee to a religious or charitable use must show that it was executed in strict compliance with the act.

Where a will giving a legacy for charitable use was dated August 20, 1870, and a codicil of March 11, 1873, revoked this bequest and changed the amount of the legacy, and testator died two days after the execution of the codicil, it was held that the legacy was void under the act: Paulson's Est., 11 Phila. 151.

*Thomas Patterson,* of *Patterson, Crawford, Arensberg & Dunn,* for University of Pittsburgh, cited: Trim's Est., 168 Pa. 395; Kortright's Est., 237 Pa. 143; Carl's App., 106 Pa. 635; Sloan's App., 168 Pa. 422; Morrow's Est., 204 Pa. 484.

*Harmar D. Denny, Jr.,* with him *Alter, Wright & Barron* and *Burgwin, Scully & Burgwin,* for Allegheny County Council Boy Scouts, cited: Shand's Est., 275 Pa. 77; Thompson's Est., 282 Pa. 30; Sloan's Est., 168 Pa. 422; Morrow's Est., 204 Pa. 484; Bingaman's Est., 281 Pa. 497; Kortright's Est., 237 Pa. 143; McCulley's Est., 269 Pa. 122.

*Thomas D. McCloskey,* of *Kinnear, McCloskey & Best,* for trustees of the Western Theological Seminary of the Presbyterian Church, in the United States of America et al., cited: Carl's App., 106 Pa. 635; Bingaman's Est., 281 Pa. 497; McCulley's Est., 269 Pa. 122.

OPINION BY MR. JUSTICE FRAZER, April 18, 1927:

Appellant is a collateral heir of Mary O'Hara Darlington, who died May 17, 1925, leaving a will dated Oc-

tober 16, 1923, to which was added a codicil dated April 25, 1925, less than a month previous to her death. Appellant claims the codicil operated as a republication of the will as of the later date and, consequently, several charitable devises and bequests contained in the will are void and go to the heirs under the intestate law. Objection is also made to other specific bequests. We find no disputed facts, and the findings of the court below are based on statements appearing in the petition for a rehearing on and answers made by beneficiaries under the will. The court below sustained the will and this appeal followed.

Appellant claims a gift to Mary E. Murray of "two 5% long term bonds of $1,000 each" is void for want of specific designation in the will as to the identity of the obligations. There were many bonds among the assets of the estate and the auditing judge chose from these one 5% long term bond for $2,000, the market value of which was at or near par. The selection thus made was a proper exercise of discretion, and the fact that testatrix neglected to designate the particular bonds she desired to bequeath, did not invalidate the gift. The language of the bequest was to the same effect as if testatrix had expressly given such bonds corresponding to the amount and percentage named as her executors might choose.

Testatrix devised her interest in a part of "Guyasuta Farm," to the "Pittsburgh and Allegheny County Council Boy Scouts of America," the tract to be called "The Darlington Bird Sanctuary Guyasuta Reservation" to be under the auspices of the State Forestry Department, the purpose being to preserve wild flowers, plants, trees, birds and animals, and directed that the income from an indicated fund should be used for the care of this reservation, the fund and the property to be without liability for past or future debts of the Boy Scout Organization. The validity of this bequest is questioned on several grounds. One is that the name of the local council of

Boy Scouts is stated incorrectly, the proper name being the "Allegheny County Council Boy Scouts of America." No evidence was produced, however, tending to show the existence of two organizations of the character named having similar titles, hence there was no question as to the identity of this beneficiary, and, had there been doubt, parol evidence would have been admissible to show for which council the legacy was intended: Shand's Est., 275 Pa. 77, 81, and cases there cited.

The fact that testatrix owned only an undivided three-fourths interest in the land devised to this organization, did not affect the validity of the gift. Whatever interest she had, passed to the devisee and no adequate reason is given to support the view that, unless testatrix owned the entire fee, she was without right to devise the interest she had. That differences may possibly arise in the future, in the use of the property, by the devisee attempting to carry out the wishes of testatrix, are matters with which we are not concerned in a proceeding to determine the validity of the gift.

The stipulation that the gift should not be liable for debts of the organization was a valid restriction, testatrix having the right to make the gift on such terms as to her seemed proper and necessary. Neither was the gift void as violating the rule against perpetuities. The Boy Scouts is a charitable organization and the gift is, for that reason, within section 10 of the Act of April 26, 1855, P. L. 328, and its various amendments, down to the Act of May 23, 1895, P. L. 114, which provides, among other things, that no disposition of property for a charitable use shall fail because given in perpetuity, but that it shall be the duty of the orphans' court to carry into effect the intent of testator so far as can be ascertained. The act referred to, further provides that if the objects of the trust be not ascertainable, or have ceased to exist, or such disposition be in excess of the annual value permitted by law, or in perpetuity, such disposition, so far as it exceeds the power of the courts to determine the

same by the rules of law or equity, shall be taken to have been made subject to be further regulated and disposed of by the legislature of this Commonwealth, in manner as nearly in conformity with the intent of the donor or testator and the rules of law against perpetuities as practicable, or otherwise to accrue to the public treasury for public use.

Under the above provisions of the Act of 1895, even if the gift should, for any reason, be held defective, all interests of the residuary legatees or heirs at law are effectually eliminated, and, accordingly, they are without standing to question the decree of the court. The effect of the above act was fully discussed in Kortright's Est. (No. 2), 237 Pa. 143; McCully's Est., 269 Pa. 122, and Thompson's Est., 282 Pa. 30. In these cases the conclusion of this court was adverse to appellant's contention.

Testatrix gave to the "University of Pittsburgh" books, furniture and pictures, with a bequest of $2,000 "for arranging and cataloguing" the articles given, and also made the same institution residuary legatee, the gift to be used toward a general library building fund. Objection is made to this bequest by appellant. The University of Pittsburgh was incorporated by special act of the legislature approved the 18th day of February, 1819, P. L. 152, under the name of the Western University of Pennsylvania and in changing its name to its present title, by decree of the court of common pleas, dated July 11, 1908, the proceedings appear to have been somewhat irregular. Assuming this to be so, it does not help appellant, as no doubt exists as to the identity of the beneficiary and beyond this we are not concerned in this proceeding. We are not privileged to make a collateral inquiry into a matter wholly outside the jurisdiction of the court below.

Another objection is that the University of Pittsburgh already has property yielding an annual income of $200,000 a year, and this sum being the limit allowed by

its charter, the additional gift by testatrix was void. Whether this be true or not, appellant can have no possible interest in this gift, for reasons already stated. For the same reason we need not inquire into the effect of the Act of June 8, 1891, P. L. 211, requiring real estate devised for charitable purposes to be sold within five years from the time the right of possession shall accrue to such corporation.

Appellant contends that legacies given to the First Presbyterian Church of Pittsburgh, and the Women's Work Society, and Women's Home and Foreign Missionary Society, the latter two being organizations affiliated with the congregation named, are void because Frank C. Osborn, one of the witnesses to the will, is a ruling elder of that congregation and consequently not a disinterested witness, as the law requires. It is conceded that, as such official, his duties in connection with the church were limited to matters of doctrine and dicipline, and that he was without voice or authority in the management of the church property.

The words "disinterested witnesses," as used in the Act of April 26, 1855, P. L. 328, now replaced by section 6 of the Act of June 7, 1917, P. L. 403, must be read and understood in connection with the subject-matter of the statute, and the evils to be avoided, the requirements being intended to safeguard the rights and property of persons approaching death, and the remedy to be provided in such cases: Kessler's Est., 221 Pa. 314, 323. A discussion of this point is found in Channon's Est., 266 Pa. 417, where the question was whether a member of the Independent Order of Odd Fellows was interested in the Odd Fellows Home, the beneficiary under an alleged charitable gift, so as to disqualify him from being a competent witness to the will. Although we there held that the Order of Odd Fellows is not a charity, the following extract from the opinion is relevant to the question now before us (page 424):

"No matter what the governing rule may be where the alleged disqualification arises from an interest in a charity, we again say, at the cost of reiteration, under present circumstances the interest which will affect the capacity of an attesting witness must be in the nature of a direct property right in the testamentary fund, or such immediate, certain, close and intimate connection with the legatee as leads to the inevitable conclusion that the witness will pecuniarily profit by the legacy." The third syllabus in Channon's Estate directly covers the case in hand.

Taking into consideration the evils intended to be avoided by the statute, we are of the opinion the witness, Osborn, did not possess such interest in the charities mentioned, and could not receive from them such benefit, pecuniary interest or advantage as is within the contemplation of the Act of 1917, but, on the contrary, that his interest was too remote to disqualify him as an attesting witness.

Finally, appellant asks us to hold various charitable bequests void because made within thirty days of the death of testatrix. The will was written and signed more than a year before testatrix died; a codicil, however, was executed within thirty days of her death. The gifts in question were contained in the will. The codicil was made "in view of the fact that there are several pending and unfinished matters which should be attended to," if for any reason testatrix herself should be unable to dispose of them. Testatrix then referred to having made an offer to purchase the remaining undivided interest in the farm devised to the Boy Scouts, and authorized her executor to acquire that interest if the offer should be accepted, and hold it for the same purpose as the remainder of the tract. The interest referred to was not acquired, and the property continues to be owned in severalty by the former tenants in common, hence this provision is inoperative. Other paragraphs of the codicil merely contained administrative provi-

sions relating to the land devised to the Boy Scouts. It thus appears no effective gift was made by the codicil, and, consequently, while the rule is that a codicil operates as a republication of the will as of the date of the codicil, such republication does not operate to avoid gifts to charities contained in the will, unless the language used clearly shows such intention: Bingaman's Est., 281 Pa. 497; Williams on Executors, 221; Rhodes's Est., 147 Pa. 227, 230.

All findings of fact and conclusions of law made by the court below are fully warranted by the evidence. There was no error in permitting a specified sum of money to remain in the hands of the executor for the purpose of paying taxes and other charges on realty belonging to the estate.

All assignments of error are overruled and the decree of the court below is affirmed at the costs of appellant.