## Forish Will

*John H. Thomas*, for petitioner.

*John T. Pfeiffer* and *Joseph Semasek*, for respondent.

BOWE, P. J., February 3, 1966.—This matter is before the court on appeal from the probate by the Register of Wills of Schuylkill County of the last will and

testament of decedent. On July 21, 1965, Andrew J. Forish filed his petition with the register of wills and a citation issued to Anna Reba to show cause why the last will and testament and codicil thereto should not be set aside and letters testamentary revoked. On August 2, 1965, Mrs. Anna Reba, executrix under decedent's will dated January 23, 1960, and codicil dated February 5, 1963, filed her answer asking that the petition be dismissed.

After a preliminary hearing, by stipulation of counsel the register of wills certified the matter to the orphans' court because the same involved intricate questions of law. This procedure is authorized by section 207 of the Register of Wills Act of June 28, 1951, P. L. 638.

A hearing was held on December 16, 1965, after several continuances had been granted by agreement of counsel. At the hearing, petitioner presented evidence concerning a will dated July 18, 1964, allegedly executed by decedent after the date of the will and codicil probated by the register on April 5, 1965. Adam Bavolack, Esq., a reputable member of the bar of Schuylkill County since 1932, testified on behalf of petitioner. He testified that Mary Forish visited his office on July 18, 1964, and at her request he prepared a will for her. He stated that she executed the will by a mark in his presence and in the presence of Mary Ann Yagodzinski, his secretary who had typed the will on that date. He produced an unsigned, dated carbon copy of the original which had remained in his office files until being brought into court. He further testified that Mary Forish took the original executed copy with her when she left his office on that day and that he had instructed her to put it in her safe deposit box. Mr. Bavolack's secretary, a second subscribing witness to the will, corroborated his testimony concerning the execution and the fact that the typewritten copy was

an exact copy of the original which decedent had executed, except that the copy did not contain decedent's signature or the signatures of the witnesses. The copy had the names of the witnesses and the name of testatrix, which had been written by Mr. Bavolack.

The executed original will, dated July 18, 1964, has not been located since decedent's death, and no proof has been offered concerning the fate of this document. Petitioner contends that although the copy of the will dated July 18, 1964, cannot be probated, it revoked the prior will and codicil, since it contained the language ". . . revoking and making void any and all Wills and Testaments by me at any time heretofore made". Petitioner further contends that since the prior will and codicil were revoked, an intestacy results. No evidence was offered by respondent to refute the facts as related by Mr. Bavolack and his secretary.

In Pennsylvania, the rule is well established that when a will which testator admittedly executed cannot be found at his death and testator had retained custody of it, or had ready access to it, a legal presumption arises that he destroyed it with the intention of revoking it, and no declaration of intent, condition, and circumstances of family are sufficient to rebut this presumption: Weber's Estate, 268 Pa. 7; O'Neill's Estate, 58 D. & C. 351. The burden of overcoming this presumption of revocation must be met by proof which must be positive, clear and satisfactory: Harrison's Estate, 316 Pa. 15, 18; Dalbey's Estate, 326 Pa. 285, 288. There has been no proof in this proceeding to overcome the presumption that the will dated July 18, 1964, was revoked by testator in her lifetime. In fact, petitioner admits no such evidence exists and, therefore, concedes it was revoked.

No effort is being made, nor does petitioner contend, that the copy of the lost will should be probated. On the contrary, he alleges that an intestacy results for the

reason that the later will revoked all prior wills and codicils, even though the later will of July 18, 1964, itself had been revoked. Section 5 of the Wills Act of April 24, 1947, P. L. 89, provides:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

"(1) Will or Codicil. By some other will or codicil in writing,

"(2) Other Writing. By some other writing declaring the same, executed and proved in the manner required of wills, or

"(3) Act to the Document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses".

The question which now confronts us: Were the will dated January 23, 1960, and codicil dated February 5, 1963, revoked by "some other will . . . in writing" as required by section 5 of the Wills Act? It is logical to require that any will, to be an effective revocation of a prior will under section 5, is subject to and can only be established by meeting the requirements of probate. To state it another way, this later will has to be proved in the same manner as a lost will in order to effect a revocation of the prior will. Hodgson's Estate, 270 Pa. 210, has fixed the requisites in proving a lost will: (1) the burden rests on the proponent; (2) two witnesses must prove the contents of the lost will substantially as set forth in the copy offered for probate; and (3) each witness must be competent as to the execution and contents without aid from the other. Petitioner has met these requirements in the matter now before us. The lawyer who drafted the will and his

secretary proved the execution of the later will and testified that the carbon copy of the will which was produced was an exact copy of the will executed by decedent. The two witnesses were also the subscribing witnesses to the later will, and their testimony was not disputed. If the later will had not been revoked, the testimony offered by petitioner together with the carbon copy of the will would without a doubt qualify the copy for probate. It has long been the law in Pennsylvania that a revocation cannot be established by parol testimony of an unproduced written revocation: Koehlers' Estate, 316 Pa. 321. It has likewise been held that although parol testimony alone is insufficient, when coupled with competent proof of execution and contents, the requirements of the Wills Act for written revocation have been met: Ford's Estate, 301 Pa. 183.

There is no doubt that decedent revoked the prior will and codicil in accordance with section 5(1) of the Wills Act of 1947, supra, by execution of "some other will . . . in writing". A long line of cases indicate that the law in Pennsylvania is that proof of a later will, whether or not it has a specific revocation clause, constitutes a revocation of the prior will: McClure's Estate, 309 Pa. 370; Burtt Will, 353 Pa. 217; Gray Will, 365 Pa. 411. It follows, therefore, that proof of revocation may be established by the production of the later will, even though it had been revoked and not susceptible of probate: Burtt Will, supra.

Petitioner contends that since the earlier will and codicil were revoked, and the later will revoked, that decedent died intestate. In the absence of a will executed by decedent subsequent to July 18, 1964, an intestacy would result unless the prior will were republished. Our Supreme Court had adopted the doctrine of oral republication of a revoked will in Ford's Estate, supra. The principle was later reaffirmed by our court: Shetter's Estate, 303 Pa. 193, and Burtt

Will, supra. Under this doctrine, there was a presumption that a revocation of a later will revived a former will, but such presumption could be rebutted: Burtt Will, supra. This rule created a problem for our courts, but they felt that if it were to be changed, it required legislative action: Burtt Will, supra. The legislature has now eliminated any doubt on the question of oral republication by enacting section 6 of the Wills Act of 1947, which provides:

"Section 6. Revival of Revoked or Invalid Will.— If, after the making of any will, the testator shall execute a later will which expressly or by necessary implication revokes the earlier will, the revocation of the later will shall not revive the earlier will, unless the revocation is in writing and declares the intention of the testator to revive the earlier will, or unless, after such revocation, the earlier will shall be re-executed. Oral republication of itself shall be ineffective to revive a will".

Under the present law, it is clear that there has been no republication of the prior will and codicil, even though the earlier will was found in decedent's safe deposit box: see Schwenk Will, 6 Fiduc. Rep. 137. In view of the above authorities, the court's hands are tied in absence of written republication, even where it might appear that decedent in all probability desired a different result.

Accordingly, we are constrained to rule that the prior will and codicil were revoked by decedent's execution of the will of July 18, 1964, and in absence of a later will, that decedent died intestate. We, therefore, enter the following

ORDER

And now, February 3, 1966, it is hereby ordered and decreed that the appeal of petitioner is sustained, and the Register of Wills of Schuylkill County is directed to set aside the probate of the last will and testament

of Mary Forish, deceased, dated January 23, 1960, with codicil thereto dated February 5, 1963, admitted to probate on April 5, 1965, and to revoke the letters testamentary granted to Anna Reba, respondent, on the same date.