## Burch Estate

*John C. Brooks* and *Gary E. Hartman*, for exceptant.

*Michael W. Weir, Edward S. Bulleit* and *Sullivan & Cromwell*, contra.

MACPHAIL, P. J., November 13, 1973.—An exception has been filed to the statement of proposed distribution as set forth by the executor of the last will and testament of Rae Crum Burch, deceased. Briefs

have been filed and arguments heard and the matter is now before us for disposition.

In her will testatrix provided, inter alia:

"FIFTH: I bequeath the remaining seventy per cent (70%) of the rest, residue and remainder of my estate, subject to the payment of all Pennsylvania inheritance taxes that may be due from my estate, in equal shares to the American Heart Association and the American Arthritis Association."

Decedent's gross estate was $9,716.46, of which sum $7,191.91 was available for distribution after the payment of debts and administration expenses. The accountant proposes to distribute $2,257.60 to American Heart Association and $2,257.60 to the Arthritis Foundation to comply with the provisions of paragraph fifth of decedent's will as above set forth. The exception to the statement of proposed distribution has been filed by the American Arthritis Association, contending that the sum of $2,257.60 should be distributed to it rather than to the Arthritis Foundation.

No testimony was offered or taken for the reason that the essential facts have been stipulated or appear from the record of probate. Decedent's will is dated October 19, 1967. At that time, the American Arthritis Association was not a specifically identifiable organization. The American Arthritis Association came into existence as a nonprofit corporation on March 9, 1972. The Arthritis Foundation was one of several organizations existing as of October 19, 1967, with the purpose of aiding persons afflicted with the disease of arthritis. It was the only one of those organizations that had a "chapter" located in Harrisburg at the time decedent's will was written. It is also, and was in 1967, the largest of such organizations.

Decedent died April 13, 1972.

The issue is whether the court has the power or the

duty to award any part of the estate of testatrix to a charity other than the specific charity named in her will when that specific charity is in existence at the time of her death. As will be readily observed, the American Arthritis Association did not exist on October 19, 1967, the date of testatrix' will, but it did come into being one month prior to decedent's death.

The Arthritis Foundation contends that testatrix could hardly have intended to make a gift to an organization which was not in existence. The American Arthritis Association questions whether the court has any authority to inquire as to the intention of testatrix where there is a clearly identifiable beneficiary named in the will ready, willing and able to accept the bequest.

It has been held that admission of evidence to show the intent of the settlor of a trust is the exception and not the rule for the sound reason that the writing itself must be considered to be the best and controlling evidence of the settlor's intent: Berks County Tuberculosis Society Appeal, 418 Pa. 112 (1965). In the same case, the court held that although the settlor may have intended to benefit some other recipient, evidence of that fact is inadmissible if the designation in the trust instrument identifies with clarity another recipient. We are of the opinion that the same law would apply to those exercising testamentary capacity by the making of a will.

However, even though it may appear from the face of the will that the will is self-executing as written, nevertheless, evidence of extrinsic facts and circumstances is sometimes admissible to show that, in fact, an ambiguity does exist: Metzger's Estate, 222 Pa. 276 (1908). Thus, in Jone's Estate, 7 District 361 (1898), where testatrix designated a beneficiary in the will by its exact corporate title, the court said, at page 361:

"[T]here are many decisions that where there is one who fully and exactly answers the description, evidence is not admissible to show that another was intended who did not so answer (citing cases), *unless it is also clearly shown that the testator was not aware of the existence of the one who did* (citing cases)." (Italics supplied.)

This seems to be merely the application of good sense. One could hardly intend to be the benefactor of an organization that did not exist; or, to put it in the terminology of Jones's Estate, supra, testatrix could not be aware of the existence of the American Arthritis Association because at the time she named that association it was not then in being.

Therefore, we reach the conclusion that although the will identifies with clarity a recipient now in existence, there is, in fact, an ambiguity in the will by virtue of the peculiar fact and circumstance that at the time testatrix wrote her will there was no such organization as "The American Arthritis Association." In resolving the ambiguity, we may regard the matter as the misnomer of a corporation or it may be necessary to invoke the doctrine of cy pres: Eagleson Estate, 13 Fiduc. Rep. 454 (1963). It is not necessary that testatrix identify the object of her bounty by its precise corporate name. The real names of charitable corporations are often never used and never known by the people generally. In such cases, the courts have not hesitated to use the rule of reason where there is substantial but not technical identification.

In the case now before us, it has been stipulated that the Arthritis Foundation was not only in existence at the time testatrix wrote her will, but there was a chapter of that organization in Harrisburg, Pa., located about 35 miles north of the place of testatrix's residence. Furthermore, it appears that there was no other organ-

ization with a similar purpose active in the area where testatrix resided, although such organizations did exist elsewhere. It may also be significant that testatrix was consistent in her terminology, "the American Heart Association" and "the American Arthritis Association." It seems obvious that she equated the existence of a nationwide arthritis association with a nationwide heart association. Indeed, there was a nationwide arthritis association but it was known by another name, to wit, "The Arthritis Foundation."

It is our opinion that this case then falls within the holding of Darlington's Estate, 289 Pa. 297 (1927), where it was held that where there was no evidence that more than one organization existed of the character named in testator's will with similar titles, extrinsic evidence would be unnecessary to ascertain testator's intent. Here, there is only one such organization of which testatrix could have had any knowledge at the time she wrote her will, namely the Arthritis Foundation.* We are aware of, but can easily distinguish, Mercantile National Bank v. National Cancer Research Foundation, 488 S.W. 2d 605 (1972). In that case, both competing charities were in existence at the time decedent executed her will which, of course, is not the fact here. The issue in the Texas case was which charity did testatrix mean when her designation did not identify either organization by its correct name. We do not perceive that to be the issue in the case now before us.

Accordingly, we will enter the following decree.

---

* Notice of the filing of the account and statement of proposed distribution was given by the accountant to "Arthritics and Friends United." No claim has been filed by that organization and no exception has been filed by it to the statement of proposed distribution.

## DECREE OF COURT

And now, November 13, 1973, the exception to the accountant's proposed schedule of distribution is denied. The account is confirmed and the schedule is approved as stated.